1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   JONATHAN KOHUT,                      Case No.: 1:20-cv-01584-JLT-CDB (PC)

12                   Plaintiff,           **ORDER DIRECTING THE CLERK OF THE
                                          COURT TO TERMINATE CERTAIN
13          v.                            PARTIES FROM THE DOCKET FOR THIS
                                          ACTION**
14   K. ALLISON, et al.,
                                          **FINDINGS AND RECOMMENDATIONS TO
15                   Defendants.          DISMISS CERTAIN CLAIMS AND
                                          DEFENDANTS FOLLOWING SCREENING
16                                        OF PLAINTIFF'S THIRD AMENDED
                                          COMPLAINT**
17
                                          **14-DAY OBJECTION DEADLINE**
18

19          Plaintiff Jonathan Kohut is appearing pro se and *in forma pauperis* in this civil rights

20   action pursuant to 42 U.S.C. section 1983.

21          **I.      INTRODUCTION**

22          The Court issued its Second Screening Order Granting Leave to File Third Amended

23   Complaint on June 30, 2023. (Doc. 44.) Specifically, the Court determined that Plaintiff's second

24   amended complaint stated the following cognizable claims: First Amendment retaliation claims

25   against Defendants Frauenheim, R. Godwin, Aaron Shimmin (Claim II); First Amendment mail

26   interference and retaliation claims against Defendants S. Van Ingen, M. Anaya, John/Jane Does

27   #1 and #2 (Claims IV, V, VI and VIII); Fourteenth Amendment due process claims against

28   Defendants S. Van Ingen, M. Anaya, John/Jane Does #1 and #2 (Claim IX); Bane Act claims

against Defendants S. Van Ingen, M. Anaya, John/Jane Does #1 and #2 (Claim XII); and negligence claims against Defendants S. Van Ingen, M. Anaya, John/Jane Does #1 and #2 (Claim XIII); it further determined that any other claims asserted against any defendant failed to state a claim upon which relief could be granted. (*Id*. at 10-31.) Plaintiff was directed to do one of the following within 30 days: (1) file a third amended complaint curing the deficiencies identified in the second screening order; or (2) file a notice indicating he wished to proceed only on the claims found cognizable by the Court; or (3) file a notice of voluntary dismissal. (*Id*. at 32-33.)

On July 26, 2023, Plaintiff filed a third amended complaint. (Doc. 45.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    PLEADING REQUIREMENTS

### A.    Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

1    *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

2    conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

3        The Court construes pleadings of pro se prisoners liberally and affords them the benefit of

4    any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

5    liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

6    theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

7    of a civil rights complaint may not supply essential elements of the claim that were not initially

8    pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

9    quotation marks & citation omitted), and courts "are not required to indulge unwarranted

10   inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

11   marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

12   sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

13   liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

## B.  Linkage and Causation

15       Section 1983 provides a cause of action for the violation of constitutional or other federal

16   rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

17   section 1983, a plaintiff must show a causal connection or link between the actions of the

18   defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

19   423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

20   deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

21   act, participates in another's affirmative acts, or omits to perform an act which he is legal required

22   to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

23   743 (9th Cir. 1978) (citation omitted).

## C.  Supervisory Liability

25       Liability may not be imposed on supervisory personnel for the actions or omissions of

26   their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.,*

27   *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

28   adduce evidence the named supervisory defendants "themselves acted or failed to act

1    unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

2    *Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

3    (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

4    1983 there must be a showing of personal participation in the alleged rights deprivation: there is

5    no respondeat superior liability under section 1983").

6          Supervisors may be held liable only if they "participated in or directed the violations, or

7    knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

8    Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

9    'series of acts by others which the actor knows or reasonably should know would cause others to

10    inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr*

11    *v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction

12    in the training and supervision of subordinates).

13          Supervisory liability may also exist without any personal participation if the official

14    implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

15    rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942

16    F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

17    *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

18          To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

19    deprivation resulted from an official policy or custom established by a ... policymaker possessed

20    with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707,

21    713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such

22    defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

23    *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

24    involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

25    *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

26    //

27    //

28    //

## IV.    DISCUSSION

### A. Plaintiff's Third Amended Complaint

Plaintiff names the following individuals as Defendants in this action:

1. Jeff Macomber, Secretary of California Department of Corrections and Rehabilitation (CDCR), in his official capacity

2. Scott Frauenheim, former/retired Warden of Pleasant Valley State Prison (PVSP), in his individual and official capacities

3. R. Godwin, Warden of PVSP, in his individual and official capacities

4. Tristan Lemon, Warden of PVSP, in his official capacity

5. J. Gaona, Correctional Counselor I, at the Central California Women's Facility (CCWF), in her individual capacity

6. M. Anaya, PVSP mailroom supervisor, in his/her individual capacity

7. S. Van Ingen, PVSP mailroom official, in his/her individual capacity

8. John/Jane Doe #1, Institutional Security Unit (ISU) official at PVSP, in his/her individual capacity

9. John/Jane Doe #2, receiving and release official at PVSP, in his/her individual capacity

10. John/Jane Does #3 through #8

(Doc. 45 at 2-3.) Plaintiff seeks money damages, costs "including reasonable paralegal fees under 42 U.S.C. § 1988 …," and other relief deemed just and equitable by the Court. (*Id.* at 18.)

Further, Plaintiff seeks the following injunctive relief:

A preliminary and permanent injunction that effectively nullifies the policy currently in force throughout the CDCR, statewide, that prohibits "approved correspondents" from full exercise and enjoyment of their rights afforded under the 1st Amendment of the U.S. Constitution, Article I, section 2 of the California Constitution, and declaratory relief finding the policy to be devoid of legitimate penological justification;

A preliminary and permanent injunction prevent[ing] Defendants, as well as their colleagues, employees, agents and/or officials, and any and all persons acting in concert with them from further violations of Plaintiff's rights guaranteed under the 1st & 14th Amendments of the U.S. Constitution, and Article I, section 2 of the California Constitution, California Civil Code § 52.1, and providing other warranted equitable relief

5

1   (*Id*.)

2   ### B. Plaintiff's Factual Allegations

3   Shortly after arriving at PVSP on April 2, 2019, Plaintiff submitted "an initial 1074 form"

4   or correspondence request to his assigned correctional counselor. (Doc. 45 at 4.) When more than

5   three months passed without a response, Plaintiff submitted another form. (*Id*.) Again, Plaintiff

6   received no response after an extended wait. (*Id*.) Ultimately, Plaintiff asserts that on November

7   18, 2019, "a form submitted by Plaintiff" was approved by Defendant Gaona. (*Id*.) Pursuant to

8   Title 15 of the California Code of Regulations (CCR), section 3139(c)(7), Defendant Gaona was

9   obligated to distribute the approved form to the mailrooms at CCWF and PVSP, in addition to the

10  central files pertaining to Plaintiff and "Ms. Winter (not named)." (*Id*.) Plaintiff asserts that

11  instead Gaona intentionally, willfully, maliciously, and with the intent to obstruct or chill

12  Plaintiff's exercise of his constitutional rights, elected "to forego her legal obligation" to do so.

13  (*Id*.) Plaintiff alleges Gaona's actions "put in motion the events subsequently set forth" in the

14  third amended complaint. (*Id*.) Plaintiff contends Gaona's actions and inaction were the moving

15  force behind "PVSP rejecting Plaintiff's incoming mail" and that he is dependent upon the United

16  States Postal Service (USPS) "for any and all of his written correspondence with Ms. Winter."

17  (*Id*.) Plaintiff avers Ms. Winter forwarded the approved 1074 form by Defendant Gaona to the

18  CCWF mailroom, but Ms. Winter was unsuccessful in attempting to provide the same form or

19  notice to the PVSP Defendants. (*Id*. at 4-5.) Plaintiff contends "no fewer than 3 attempts were

20  made to apprise PVSP Defendants of the approved 1074" form between November 18, 2019, and

21  February 22, 2020. (*Id*. at 5.) Plaintiff contends 1074 forms bearing Defendant Gaona's signature,

22  and marked "'For the PVSP Mailroom,'" were "forwarded and received by the PVSP mailroom,"

23  but the forms were not acknowledged or recognized. (*Id*.) Plaintiff alleges Ms. Winter personally

24  met with Defendant Gaona, making repeated requests that Gaona "properly enter the form in

25  order to avoid any further rejections of correspondence." (*Id*.) During that period, Plaintiff's

26  letters were received by Ms. Winter at CCWF, yet Ms. Winter's letters to Plaintiff were

27  wrongfully rejected by PVSP. (*Id*.) Plaintiff further alleges that Defendant Gaona "refused to send

28  an e-mail to the Defendants at PVSP, apprising them of the approval." (*Id*.)

1        Plaintiff alleges that on March 23, 2020, he filed a grievance "aimed at PVSP mailroom

2    [officials]" after being advised by a third party that Ms. Winter's mail directed to Plaintiff had

3    been "repeatedly rejected." (Doc. 45 at 5.) The grievance cited significant delays in delivery times

4    concerning incoming mail, wrongful rejection of "U.S. Mail" intended for Plaintiff, and "no

5    notice being provided advising of mail being rejected." (*Id*.) Defendant Van Ingen interviewed

6    Plaintiff in connection with his grievance. (*Id*. at 6.) Van Ingen offered Plaintiff "20 metered

7    envelopes to drop his complaint" but Plaintiff declined. (*Id*.) Plaintiff asserts he "iterated the

8    emotional implications" regarding the rejected letters, and that the most egregious act "was the

9    fact that the PVSP mailroom (supervised by Defendant M. Anaya …) had an 'underground

10   custom' of failing to provide notification that mail was being censored and/or rejected." (*Id*.)

11   Plaintiff also complained that incoming mail was taking three weeks to one month to be

12   delivered. (*Id*.)

13       Plaintiff asserts the grievance process at PVSP concerning mail "brought absolutely no

14   relief," and that subsequently filed "602's aimed at bringing practices" at PVSP into compliance

15   resulted in additional delays. (Doc. 45 at 6.) Plaintiff's rejection of Defendant Van Ingen's

16   "informal settlement offer" and the multiple additional grievances he submitted resulted in

17   retaliation by Defendants Van Ingen, Anaya, and "Does #1-8." (*Id*.)

18       Next, Plaintiff states he enrolled in a paralegal studies program, and that textbooks, other

19   course materials, and mail from the school "were delayed excessively, and far beyond time

20   constraints." (Doc. 45 at 6.) Those delays, occurring under Defendant Anaya's supervision,

21   extended his completion of the program and adversely affected his "emotional state." (*Id*.)

22       Plaintiff maintains that the first level response "to the 602 aimed at PVSP mailroom

23   Defendants" granted relief "in the form of the implementation of notice provision and utilization

24   of the CDCR 1819 forms." (Doc. 45 at 7.) Plaintiff contends that Defendant Frauenheim, at the

25   second level of review, "expressed that the 1819 forms would be put to use, and that other issues

26   involving retaliation were unsupported by evidence." (*Id*.) Plaintiff alleges Frauenheim's

27   response "was disingenuous" and that his allegations concerning delivery times regarding

28   incoming mail were "glossed over by Defendants." (*Id*.)

Meanwhile, outgoing mail processing by "PVSP Defendants" deviated "from the procedures set forth by the controlling authorities." (Doc. 45 at 7.) When Plaintiff submitted a CDC-193 form for the purchase of a quarterly package on January 27, 2020—during the first quarter—Defendant Doe #1 failed to perform his ministerial duty concerning payment. (*Id.*) Instead of submitting the payment within five days as required, Doe #1 delayed until February 28, 2020; because the package was not shipped by the vendor until March 23, 2020, when it was delivered to PVSP on April 17, 2020, the package was designated as having been received during the second quarter. (*Id.*) Further, Plaintiff alleges that "PVSP officials" received delivery of a "second quarter package" for Plaintiff on June 2, 2020, but Defendant Doe #2 returned the package to the vendor and failed to notify Plaintiff of its delivery or to provide Plaintiff with an opportunity to appeal that action. (*Id.* at 7-8.)

Under the heading "Supervisor Liability," Plaintiff contends Defendants Frauenheim, Godwin, Shimmin,[1] Anaya, and Gaona "were the moving force" behind the constitutional violations alleged because each "did in fact have either personal involvement, or direct knowledge of the ongoing violations" alleged, and that they "were vested with the discretion and/or authority" to provide the requested relief or to implement remedial measures, "yet failed to curb the procedural deficiencies of their subordinates." (Doc. 45 at 8.) Plaintiff maintains that "by virtue of their" positions, the supervisory defendants were responsible "for overseeing the management and operations of their subordinates" and "were responsible for the hiring and/or screening, training, supervision, discipline, counseling, and control" of their subordinates. (*Id.*) The supervisory defendants' "failure to curb" the violations constitute deliberate indifference to Plaintiff's constitutional rights. (*Id.*)

Under the heading "CDCR Policy Maintained," Plaintiff contends his attempts to make two purchases on behalf of Ms. Winter were thwarted by "PVSP officials." (Doc. 45 at 8-9.) Those officials "refused to process a book order intended for Ms. Winter citing departmental policy." (*Id.* at 9.) Further, an electronic appliance purchase meant for Ms. Winter's benefit,

---

[1] But A. Shimmin is not named as a defendant in Plaintiff's third amended complaint. (*See* Doc. 45 at 2-3.)

1    sought from vendor Walkenhorst, was denied; the explanation provided by the vendor "cited

2    'CDCR policy' as being non permissive of any purchases made by individuals in CDCR

3    [custody] on behalf of others also in custody within CDCR." (*Id.*) Plaintiff alleges however that

4    there is "no legitimate penological justification for any continued application of this CDCR

5    policy" because "'approved correspondents'"—Plaintiff and Ms. Winter—had already "been

6    screened by the department," therefore, the policy "impinges on the rights of the Plaintiff, as well

7    as parties not named." (*Id.*) On that basis, Plaintiff seeks "declaratory/injunctive relief" against

8    Defendant Macomber." (*Id.*)

9         Under the heading "Summation of Allegations," Plaintiff alleges all named Defendants

10   "had/has an official duty to perform relevant to this action" and that "the ministerial obligations

11   imposed by Title 15, Subchapter 2, Article 4. Mail, §§ 3130-3147, are based upon federal rulings

12   (SCOTUS), as well as California statutory authorities, and violation(s) of such presents federal

13   questions appropriate reviewed under 42 U.S.C. § 1983." (Doc. 46 at 9.) Referring to *Procunier

14   v. Martinez* and *Bell v. Wolfish*, Plaintiff asserts "the parties Defendant to this action, have an ever

15   present legal obligation to have knowledge of, and to apply these regulations in a manner which

16   affords" Plaintiff his constitutional rights. (*Id.*) Plaintiff maintains the "Defendants

17   actions/inactions were perpetrated under the authority and color of state law" and carried out

18   within the course and scope of employment. (*Id.* at 10.) Plaintiff asserts a special relationship

19   exists between Plaintiff "and the Defendants, and that the emotionally distressing factors that

20   were being inflicted upon him as the result of Defendants' conduct, were made expressly,

21   explicitly, abundantly, and adamantly clear to Defendants through the 602 process, including

22   interviewed conducted by" Defendant Anaya and Van Ingen. (*Id.*)

23        Plaintiff contends that "as a proximate result of the allegations set forth throughout this

24   action," he suffered humiliation, mental anguish, and emotional and physical distress. (Doc. 45 at

25   10.) His injuries include significant stress, loss of appetite, and weight loss. (*Id.*) The significant

26   stress occurred as a result of his "inability to maintain an ongoing dialogue through

27   correspondence" due to delays, "frustrations" affecting his relationship with Ms. Winter,

28   "disingenuous responses" to his grievances and futility of the process, remedies that "never

1  materialized," retaliatory behavior, Plaintiff's "inability to depend on Defendants' adherence to"

2  regulations governing mail and that Plaintiff's funds would be forwarded "within a reasonable

3  and timely manner," that "Defendants sole motivations were to defend their wrongful conduct,"

4  and Plaintiff's monetary losses. (*Id*. at 10-11.) Further, Plaintiff alleges he sought mental health

5  treatment for "alternatives for stress relief, rage control, and mood stabilization." (*Id*. at 11.)

6       Lastly, Plaintiff asserts "Defendants, and other agents/officials employed by the CDCR,

7  are responsible for, or personally participated in creating and/or implementing the policies and

8  practices" about which he complains, and for "permitting the procedural deficiencies alleged to

9  develop and persist until 'underground regulations' took root," leading to further deviations

10 despite Plaintiff's efforts to seek relief. (Doc. 45 at 12.) He maintains "Defendants'

11 unconstitutional policies, practices, and customs were and are the moving force" behind his

12 injuries and the damages he suffered. (*Id.*)

13       **C.  Plaintiff's Claims**

14       Plaintiff presents seven claims for relief. (Doc. 45 at 12-17.) Those claims include First

15 Amendment violations (claims 1 & 2), a violation of his freedom of speech arising under the

16 California Constitution (claim 3), Fourteenth Amendment due process violations (claim 4),

17 violations of the Bane Act (claim 5), intentional infliction of emotional distress (claim 6), and

18 negligence (claim 7).

19       Claim 1

20       Plaintiff contends "Defendants" violated his "right to utilize the U.S.P.S., insofar as such

21 use pertains to Plaintiff's exercisement [sic] of his right to freedom of speech, and the freedom to

22 communicate with parties outside of the institution." (Doc. 45 at 12.) Plaintiff maintains

23 "Defendants' conduct was objectively unreasonable, and was undertaken recklessly, intentionally,

24 willfully, with malice" and with deliberate indifference to his rights. (*Id*.) Plaintiff asserts his

25 injuries were "directly and proximately caused by the policies and practices of these Defendants,"

26 the moving force behind the violations alleged. (*Id*. at 12-13.) Plaintiff asserts that "if not

27 enjoined," the injuries and damages will continue. (*Id*. at 13.) He "seeks nominal and

28 compensatory damages against all Defendants," excepting Defendant Macomber. (*Id*.) Plaintiff

states he "also seeks punitive damages solely against the individual Defendants in their individual capacities." (*Id.*)

The Court construes Plaintiff's first claim for relief to assert First Amendment right to send and receive mail claims and First Amendment retaliation claims against all Defendants.[2]

*First Amendment - Right to Send & Receive Mail: Legal Standards*

> Appellant, as a prison inmate, enjoys a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 [] (1989). However, a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 [] (1987). Legitimate penological interests include "security, order, and rehabilitation." *Procunier v. Martinez*, 416 U.S. 396, 413 [] (1974). When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a "closer fit between the regulation and the purpose it serves." *Abbott*, 490 U.S. at 412 []. However, in neither case must the regulation satisfy a "least restrictive means" test. *Id.* at 411-13 [] (explaining *Procunier v. Martinez*).

*Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). A single mistake or occasional mishandling of mail, legal or nonlegal, does not state a claim under section 1983. *Reynolds v. Potts*, 8 F.3d 29 (9th Cir. 1993) (citations omitted) (unpublished); *see Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (emphasizing that a temporary delay or isolated incident of delay of mail does not violate a prisoner's First Amendment rights). Similarly, a claim for negligent mishandling or misdirection of mail is also not actionable under section 1983. *Rhinehart v. Gomez*, 205 F.3d 1352 (9th Cir. 1999) (citing *Daniels v. Williams*, 474 U.S. 327, 330-32 (1986)). Moreover, a plaintiff must be able to show that he was injured; mere delay in receiving or sending mail does not state a cognizable claim. *See Reynolds*, 8 F.3d at 29 (citing *Morgan v. Montanya*, 516 F.2d 1367, 1371 (2d Cir. 1975)).

Prison officials may justifiably censor outgoing mail concerning escape plans, information about proposed criminal activity, or the transmittal of encoded messages. *Martinez*, 416 U.S. at 413. Prison officials may also visually inspect outgoing mail to determine whether it contains contraband material which threatens prison security or material threatening the safety of the

---

[2] The third amended complaint asserts no facts related to First Amendment legal mail or access to courts claims.

1    recipient. *Witherow*, 52 F.3d at 266.

2    *First Amendment - Right to Send & Receive Mail: Analysis*

3    Here, as before (*see* Doc. 44 at 14), Plaintiff plausibly alleges First Amendment violations

4    against PVSP Defendants Anaya, Van Ingen, Doe #1 and Doe #2 concerning Plaintiff's right to

5    send and receive mail. He contends these individuals mishandled, obstructed and/or delayed his

6    incoming and outgoing mail. Outgoing mail was not sent, and incoming mail or parcels were

7    significantly delayed or returned without notice to Plaintiff.

8    Liberally construing the third amended complaint and accepting all facts as true, Plaintiff

9    also plausibly alleges First Amendment right to send and receive mail violations against

10   Defendants Frauenheim and Godwin, asserting these supervisory defendants implemented a

11   policy so deficient that it is a repudiation of his constitutional rights and was the moving force

12   behind the constitutional violation." *Redman*, 942 F.2d at 1446.

13   As concerns Defendant Gaona, the sole CCWF employee, as before, this Court finds

14   Plaintiff has failed to state a claim upon which relief can be granted. While Plaintiff contends

15   Gaona wrongfully withheld the 1074 approval form permitting correspondence between he and

16   Ms. Winter, obstructing Plaintiff's ability to send and receive mail and causing him emotional,

17   physical and monetary harm, this single incident is an isolated one. (*See* Doc. 44 at 14

18   ["Moreover, Gaona's alleged misconduct is akin to an isolated incident the Court of Appeals

19   holds is not an actionable constitutional violation"].) *See Crofton*, 170 F.3d at 961; *Reynolds*, 8

20   F.3d at 29; *Martin v. Cadena*, No. 23-35161, 2024 WL 3949950 (9th Cir. 2024) (Memorandum)

21   (citing *Crofton*). An isolated incident may state a claim if accompanied by evidence of an

22   improper motive. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *White v. Decker*, No.

23   2:24-cv-01685-CKD, 2024 WL 4374276, at *2-3 (E.D. Cal. Oct. 2, 2024) ("the mail interference

24   must involve more than isolated incidents or, if so isolated, be based on an improper motive,"

25   citing *Smith*). Here, however, the facts alleged as to Gaona's motive are vague and conclusory,

26   and amount to nothing more than legal conclusion. (*See* Doc. 45 at 4 ["J. Gaona made a conscious

27   decision to forego her legal obligation and that furthermore, she did so intentionally, with ill will

28   and/or malice, and with the specific intention of obstructing, chilling and ultimately freezing the

1    Plaintiff's [exercise] of his rights"].) No facts pleaded reflect an improper motive.

2         To the extent Plaintiff intended to assert this claim against Defendant Does #3 through #8,

3    no facts are alleged concerning these individuals. As Plaintiff was previously advised, "Doe

4    defendants cannot be served by the United States Marshal until Plaintiff has identified them" and

5    Plaintiff's "shotgun approach" to these individuals means "it is clear that discovery would not

6    uncover their identities in order to serve process." (*See* Doc. 44 at 25.)[3] Once again, the Court

7    finds "the Doe defendants, except for John/Jane Does #1 and #2, should be dismissed without

8    prejudice." (*Id.*)

9                           *First Amendment - Retaliation: Legal Standards*

10        Prisoners have a First Amendment right to file prison grievances and lawsuits and

11   retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v.*

12   *Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the

13   prison context requires: (1) that a state actor took some adverse action against the plaintiff (2)

14   because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's

15   exercise of his First Amendment rights, and (5) "the action did not reasonably advance a

16   legitimate correctional goal." *Id.* 567-68. To prove the second element, retaliatory motive,

17   plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind

18   the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009).

19   Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive;

20   mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011);

21   accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating

22   defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may

23   include: (1) proximity in time between the protected conduct and the alleged retaliation; (2)

24   defendant's expressed opposition to the protected conduct; and (3) other evidence showing that

25   defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at

26   882.

27   ---

28   [3] Plaintiff's third amended complaint states: "Upon ascertaining the true identities of these Defendants, Plaintiff shall seek leave to amend this complaint so that these parties may be properly included in this litigation." (Doc. 45 at 3.)

13

1           *First Amendment - Retaliation: Analysis*

2           Here, liberally construing the third amended complaint and accepting the facts alleged as

3 true, Plaintiff plausibly alleges First Amendment retaliation claims against Defendants Anaya,

4 Van Ingen, and Does #1 and #2. Plaintiff contends his submission of numerous grievances

5 concerning the sending and receiving of his mail caused Anaya and Van Ingen to excessively

6 delay, return or reject his mail in the absence of the required notice. And he asserts that in

7 response to one such grievance, Van Ingen "offered him 20 metered envelopes to drop his

8 complaint." Further, he asserts that Doe #1 failed to timely issue payment to accompany a

9 quarterly package, resulting in a months-long delay and that Doe #2 failed to provide notice of

10 another quarterly package that was returned to the vendor. Plaintiff alleges these actions or

11 inactions chilled the exercise of his First Amendment rights and did not reasonably advance a

12 legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

13           However, to the extent Plaintiff intended to assert this claim against any other named

14 defendant or Does #3 through #8, he fails to do so because no facts are alleged to demonstrate any

15 other named defendant or Does #3 through #8 took some adverse action against him due to his

16 protected conduct and that that action chilled the exercise of his constitutional rights in the

17 absence of a legitimate correctional goal.

18           <u>Claim 2</u>

19           Plaintiff alleges CDCR's policy "that prohibits individuals with 1074 correspondence

20 approval from effectuating purchases on behalf of an approved correspondent is without

21 legitimate penological justification" and violates his First Amendment rights. (Doc. 45 at 13.) He

22 maintains a "genuine controversy exists regarding the parties' rights, privileges, duties and

23 obligations," that the policy is unconstitutional on its face, entitling him to injunctive relief.

24 Plaintiff also alleges that Defendant Macomber's policy has caused him "injury and damages that

25 shall persist if not enjoined." (*Id.*)

26           The Court construes Plaintiff's second claim to assert a First Amendment claim regarding

27 a PVSP mail policy.

28

1  *First Amendment – Mail Policy: Legal Standards*

2       As set forth above in discussing Plaintiff's first claim, prisoners have a First Amendment

3  right to send and receive mail, but prison regulations may curtail that right so long as the

4  regulations are reasonably related to legitimate penological interests (including security, order,

5  and rehabilitation) and such regulations need not be the least restrictive available  *See supra*

6  (citing, *inter alia*, *Witherow*, 52 F.3d at 265); accord *Nordstrom v. Ryan*, 856 F.3d 1265, 1272

7  (9th Cir. 2017); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Courts owe "substantial

8  deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S.

9  126, 132 (2003). These standards apply to regulations and practices concerning all

10  correspondence both among prisoners and between a prisoner and non-prisoners. *Thornburgh*,

11  490 U.S. at 413.

12       A constitutional challenge to a policy is "'facial' [if] it is not limited to plaintiff['s]

13  particular case, but challenges application of the law more broadly ...." *John Doe No. 1 v. Reed*,

14  561 U.S. 186, 194 (2010) (facial challenges "reach beyond the particular circumstances of these

15  plaintiffs.") Facial challenges are disfavored. *Wash. State Grange v. Wash. State Republican*

16  *Party*, 552 U.S. 442, 450 (2008). "A facial challenge to a [policy] is, of course, the most difficult

17  challenge to mount successfully, since the challenger must establish that no set of circumstances

18  exists under which the [policy] would be valid. The fact that the [policy] might operate

19  unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly

20  invalid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

21       In the First Amendment context, however, courts have "recognize[d] 'a second type of

22  facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its

23  applications are unconstitutional, judged in relation to [its] plainly legitimate sweep.'" *United*

24  *States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange*, 552 U.S. at 449 n.6).

25  When a plaintiff presents such a facial challenge to a prison regulation, courts evaluate it using

26  the *Turner* framework (*supra*, p. 11), just as it would if the challenge were to a specific

27  application of the regulation. *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004).

28       Before the Court can apply the *Turner* factors, it must construe the challenged policy. *See*

1    *United States v. Williams*, 553 U.S. 285, 293 (2008) ("[I]t is impossible to determine whether a

2    statute reaches too far without first knowing what the statute covers").

*First Amendment – Mail Policy: Analysis*

4        Plaintiff specifically asserts a facial challenge to the CDCR and PVSP policy prohibiting

5    inmates who are approved correspondents from purchasing items for one another.

6        The Court cannot determine whether the challenged policy is "reasonably related to

7    legitimate penological interests." *Turner*, 482 U.S. at 89. Plaintiff asserts that policy "is without

8    legitimate penological justification" and has caused him harm. As the Court cannot interpret the

9    policy concerning the purported prohibition of approved inmate correspondents making purchases

10   for one another, or apply the *Turner* factors, the Court finds, at the pleading stage, that Plaintiff

11   states cognizable claims for violations of the First Amendment against Defendants Macomber,

12   Frauenheim, Godwin, and Lemon, in their official capacities.

13       To the extent Plaintiff intended to assert a First Amendment claim as it relates to the mail

14   policy against any other named defendant, he has failed to do so. No facts asserted as to these

15   remaining named Defendants indicate they were prison officials or administrators involved in

16   policy making decisions. Because the Court in its two prior screening orders admonished Plaintiff

17   regarding his need to plead facts as to each individual named defendant's conduct and, as to

18   Claim 2, Plaintiff has not pleaded facts concerning any other named defendant, the Court finds

19   granting Plaintiff further leave to amend would be futile. *See Hartman v. CDCR*, 707 F.3d 1114,

20   1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to

21   amend futile where complaint's allegations belied plaintiff's entitlement to relief).

Claim 3

23       Plaintiff asserts Defendant Macomber "retains an unconstitutional policy" preventing

24   Plaintiff from exercising his right to free speech under the California Constitution because that

25   policy prohibits Plaintiff's "purchases on the behalf of any individual housed by CDCR after

26   having obtained a correspondence approval." (Doc. 45 at 14.) He maintains there is no "legitimate

27   penological justification" for the policy and asserts "it is deliberately indifferent" to his rights.

28   (*Id.*)

16

1          *Article I, Section 2 of the California Constitution*

2          Article I, section 2 of the California Constitution provides, in relevant part, "[e]very

3   person may freely speak, write and publish his or her sentiments on all subjects, being responsible

4   for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal.

5   Const. art. I, § 2(a).

6          Section 2(a) generally does not provide a private right of action for money damages. *See*

7   *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1100 (N.D. Cal. 2013) ("no

8   court … has yet to recognize a private right of action for damages under article I, section 2(a)

9   since *Degrassi* [*v. Cook*, 29 Cal.4th 333 (2002)]") (citations omitted); *McAllister v. Los Angeles*

10  *Unified Sch. Dist.*, 216 Cal.App.4th 1198, 1216 (2013) ("private right of action was not

11  contemplated under the [California] Constitution, section 2(a)"). However, the "[California]

12  Supreme Court did not preclude actions for declaratory or injunctive relief." *Gifford v. Hornbrook*

13  *Fire Protection District*, No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532, at *20 (E.D. Cal.

14  Sept. 14, 2021) (citing *Degrassi*, 29 Cal.4th at 338, 342 n.8).

15         *Article I, Section 2 of the California Constitution: Analysis*

16         Although there is no private right of action *for money damages* arising under Article I,

17  section 2 of the California Constitution, because Plaintiff has sued Defendant Macomber in his

18  official capacity only (Doc. 45 at 2) and seeks declaratory and injunctive relief (*id.* at 18), the

19  Court will permit Plaintiff's claim to proceed past screening on that basis.

20         To the extent Plaintiff intended to assert this claim against any other named defendant, he

21  has failed to do so; Plaintiff's claim is specific to Defendant Macomber only.

22                              Claim 4

23         Plaintiff asserts violations of his Fourteenth Amendment due process rights. (Doc. 45 at

24  14.) He contends he has a protected liberty interest in communicating with individuals outside the

25  institution by mail, and the right to receive notice and to appeal censorship or rejections of his

26  mail. (*Id.*) Plaintiff maintains "Defendants have failed to provide adequate notice of rejected

27  and/or censored correspondence" intended for him, that "Defendants' conduct was objectively

28  unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with

17

1    deliberate indifference" to his rights. (*Id*. at 14-15.) Plaintiff contends those actions caused him

2    "injury and damages;" he seeks nominal, compensatory and punitive damages against all

3    Defendants but Defendant Macomber. (*Id*. at 15.)

*Fourteenth Amendment – Due Process: Legal Standards*

5        As previously explained (*see* Doc. 44 at 18-19), the Due Process Clause of the Fourteenth

6    Amendment protects prisoners from being deprived of a liberty interest without due process of

7    law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a liberty interest in the mail

8    that is guaranteed by the Due Process Clause. *Ray v. MacDonald*, 635 F. App'x 394, 395 (9th Cir.

9    2016) (quoting *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999) ("[Prisoners have] a

10   Fourteenth Amendment due process liberty interest in receiving notice that [their] incoming mail

11   is being withheld by prison authorities")).

12       "[T]he decision to censor or withhold delivery of a particular letter must be accompanied

13   by minimum procedural safeguards." *Procunier*, 416 U.S. at 417-18, overruled on other grounds

14   by *Thornburgh*, 490 U.S. at 413-14; *Ray*, 635 F. App'x at 395 (the Fourteenth Amendment

15   guarantees notice of mail withheld and an opportunity to be heard on the matter); *Jones v. Shinn*,

16   No. 20-16518, 2022 WL 17662799, at *2 (9th Cir. Dec. 14, 2022) (quoting *Krug v. Lutz*, 329

17   F.3d 692, 696–97 (9th Cir. 2003) (prisoners have "a liberty interest in the receipt of [their]

18   mailings sufficient to trigger procedural due process guarantees," which generally should include

19   notice when mail is withheld and the right to two levels of review)); *Frost*, 197 F.3d at 353.

20       The California Code of Regulations provides procedural safeguards for the withholding of

21   delivery of mail. *See* Cal. Code Regs. tit. 15, § 3136. That section states that when mail is

22   withheld or rejected, "the inmate shall be informed via CDCR Form 1819," and the notification

23   should include the reason, disposition, name of the official disallowing the mail, and "the name of

24   the official to whom a grievance can be directed." Cal. Code Regs., tit. 15, § 3136(a).

*Fourteenth Amendment – Due Process: Analysis*

26       Liberally construing the third amended complaint and accepting all facts as true, Plaintiff

27   plausibly alleges Fourteenth Amendment due process violations against Defendants Anaya, Van

28   Ingen, and Doe #2. This is so because he contends these individuals failed to provide notices

1    concerning withheld or rejected mail, as a pattern and practice, depriving Plaintiff of the

2    opportunity to appeal those decisions. *Frost*, 197 F.3d at 353.

3            However, Plaintiff fails to assert a cognizable Fourteenth Amendment due process

4    violation against any other named defendant. For example, concerning Defendant Frauenheim,

5    Plaintiff alleges that Frauenheim "granted relief in the form of implementation of notice provision

6    and utilization of the CDCR 1819 forms" and that Frauenheim "expressed that the 1819 forms

7    would be put to use." (Doc. 45 at 7.) Those facts do not demonstrate violative conduct on

8    Frauenheim's part. Moreover, to the degree Plaintiff asserts Frauenheim "failed to curb the

9    procedural deficiencies" as a supervisor, the facts alleged are vague and conclusory — Plaintiff

10   provides no cogent time frame for Frauenheim's granting relief and expressed intention to employ

11   the CDCR 1819 notice form as compared to any subordinate's refusal or failure to do so. Stated

12   another way, without knowing when Frauenheim purportedly granted Plaintiff's grievance and

13   how that date compares to any action taken by a subordinate employee or official is not alleged.

14   Concerning Defendant Gaona, the correctional counselor at CCWF, no facts are alleged as to this

15   individual that give rise to a due process violation. And to the extent Plaintiff intended to allege

16   due process violations against the other named defendants (except Defendant Macomber as

17   expressly stated)—Godwin, Lemon, Doe #1, and Does #3 through #8—he fails to do so. As to

18   Godwin and Lemon specifically, Plaintiff fails to assert any facts demonstrating how Godwin or

19   Lemon had knowledge of the constitutional violations alleged. In fact, Plaintiff's factual

20   allegations are silent as to Lemon. Simply stating supervisors "have either personal involvement,

21   or direct knowledge" is insufficient and amounts to a legal conclusion the Court is not required to

22   accept. *Iqbal*, 556 U.S. at 678; *Fayle*, 607 F.2d at 862; *Ivey*, 673 F.2d at 268.

23           In sum, Plaintiff states cognizable Fourteenth Amendment due process violations against

24   Defendants Anaya, Van Ingen, and Doe #2. Plaintiff has been given two prior opportunities to

25   amend his complaint to cure the deficiencies previously identified. Lastly, the Court finds

26   granting Plaintiff further leave to amend this claim would be futile. *Hartman*, 707 F.3d at 1129-

27   30.

28

1

<u>Claim 5</u>

2      Plaintiff alleges violations of California Civil Code section 52.1, the Bane Act, against the

3  named Defendants. (Doc. 45 at 15.) He contends "Defendants, acting in conspiracy and/or in

4  concert, with threat, intimidation, and/or coercion" violates his rights under the statute "and

5  interfered with the exercise or the enjoyment of clearly established rights …." (*Id*.) Plaintiff

6  asserts Defendants caused him "actual injuries and damages" and "the policies and practices"

7  were the moving force behind the violations. (*Id*.) He maintains their conduct "was objectively

8  unreasonable, and was undertaken reckless, intentionally, willfully, with malice, and with

9  deliberate indifference" to his rights. (*Id*.)

10                          *Government Claims Act: Compliance Standards*

11      Under California law, in order to state a tort claim against a public entity or public

12  employee under state law, a plaintiff must allege compliance with the presentment of claims

13  requirements of the California Government Claims Act. *See* Cal. Gov't Code §§ 945.4, 950.2;

14  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Fisher v. Pickens*,

15  225 Cal.App.3d 708, 718 (1990).

16      The Act's claims presentation requirements apply to state prisoners. Cal. Gov't Code §

17  945.6(c). "Before a civil action may be brought against a public entity [or public employee], a

18  claim must first be presented to the public entity and rejected." *Ocean Servs. Corp. v. Ventura

19  Port Dist*., 15 Cal.App.4th 1762, 1775 (1993); Cal. Gov't Code § 945.4 (generally barring suit

20  "until a written claim therefor has been presented to the public entity and has been acted upon by

21  the board, or has been deemed to have been rejected by the board"). Claims for "injury to person

22  or to personal property" must be presented within six months after accrual. *See* Cal. Gov't Code §

23  911.2(a); *City of Stockton v. Super. Ct.*, 42 Cal.4th 730, 738 (2007). A claimant who misses the

24  six-month limitations deadline may file a written application with the public entity for leave to

25  present the late claim within one year of the date of accrual of the cause of action, stating the

26  reason for the delay. Cal. Gov't Code § 911.4. The claimant has six months after a denial of the

27  application to file a petition in the Superior Court for an order relieving the claimant of section

28  945.4. *See* Cal. Gov't Code § 946.6.

*Government Claims Act: Compliance Analysis*

Plaintiff asserts he has exhausted his state law remedies. (Doc. 45 at 3.) Specifically, he states he submitted a government claim form on August 5, 2020, and "a supplemental form" on March 1, 2022. (*Id.*) The original claim alleged mail interference, opening legal mail outside his presence, "wrongful rejections of correspondence (amended)," failure to adhere to notice provisions, and generally asserted violations of Plaintiff's First and Fourteenth Amendment rights. (*Id.*) Plaintiff states: "The response to the initial claim cited complexity of issues best litigated in a court of law." (*Id.*) Next, Plaintiff contends "[t]he subsequent claim[] was predicated upon PVSP officials interfering with legal correspondence" and delays regarding mail delivery. (*Id.*) Plaintiff concludes: "Claims are supplemental and occurred years after filing, yet involve the same issues alleged." (*Id.*)

In its prior screening order, the Court found that the "allegations are unclear which legal claims Plaintiff identified in his Claim Forms submitted to the DGS," noting that "any issues raised in his second Claim form filed March 1, 2022, have not been exhausted." (Doc. 44 at 26.) Nevertheless, the Court gave Plaintiff the benefit of the doubt, inferring the August 5, 2020, form "sought relief as to each of his state law claims" and concluded Plaintiff had "sufficiently alleged compliance with the GCA to consider the merits of his claims." (*Id.* at 26-27.) In the third amended complaint, Plaintiff has identified the issues raised in the August 2020 and March 2022 submissions and it appears his state law claims are exhausted. And while Plaintiff does not assert a denial of his March 2022 submission, the Court will reasonably infer one has since been issued and received.

*Bane Act: Legal Standards*

The Bane Act protects the civil rights of individuals from interference with federal or state law, carried out by "threat, intimidation, or coercion. Cal. Civ. Code § 52.1(b); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). "Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims." *Id.* at 1040-41. This "'threat, intimidation or coercion' element of the claim [need not] be transactionally independent from the constitution violation alleged." *Id.*

1  at 1043 (internal citation omitted) (citing and adopting *Cornell v. City & Cnty. of San Francisco*,

2  17 Cal.App.5th 766 (2017)). Rather, the Bane Act merely requires that allegations establish that

3  state actors exhibited "specific intent" to violate an individual's rights. *Reese*, 888 F.3d at 1043.

4                                         *Bane Act: Analysis*

5          Liberally construing the third amended complaint and accepting all facts as true, as before

6  (*see* Doc. 44 at 28), the Court finds Plaintiff states cognizable Bane Act claims against

7  Defendants Anaya, Van Ingen, Doe #1 and Doe #2, but fails to state such a claim against any

8  other named Defendant. *See Iqbal*, 556 U.S. at 678; *Fayle*, 607 F.2d at 862; *Ivey*, 673 F.2d at 268.

9  Plaintiff has been given two prior opportunities to amend his complaint to cure the deficiencies

10  previously identified. As such, granting Plaintiff further leave to amend this claim would be

11  futile. *See Hartman*, 707 F.3d at 1129-30.

12                                              Claim 6

13          Plaintiff asserts state law intentional infliction of emotional distress (IIED) claims against

14  "Defendants." (Doc. 45 at 16.) He asserts "Defendants' conduct … was undertaken with the

15  knowledge and intended purpose of causing Plaintiff emotional and/or physical distress," that the

16  conduct was outrageous and intended to cause mental anguish. (*Id*.) Plaintiff contends he suffered

17  severe emotional distress that continues, is distrustful and suspicious of Defendants regarding the

18  handling of his mail and retaliation. (*Id*.) Plaintiff asserts Defendants' conduct "was undertaken

19  wrongfully, with malice, and with a specific intent to vex, annoy[, harass]," and to subject him to

20  "emotional and/or physical anguish, and was objectively unreasonable." (*Id.* at 17.)

21                                      *IIED: Legal Standards*

22          To state a claim for intentional infliction of emotional distress under California law, a

23  plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of

24  causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

25  suffering severe or extreme emotional distress; and (4) actual and proximate causation of the

26  emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*,

27  704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009)). The

28  conduct must be "so extreme and outrageous as to go beyond all possible [bounds] of decency,

1    and to be regarded as atrocious, and utterly intolerable in a civilized community." *Butler v.*

2    *Rueter,* No. 2:22-cv-01301 KJN P, 2023 WL 1991591, at *6 (E.D. Cal. Feb. 14, 2023) (quoting

3    *Mintz v. Blue Cross of Cal.*, 172 Cal.App. 4th 1594, 1607 (2009)).

4                                              *IIED: Analysis*

5              Although Plaintiff continues to assert IIED claims against all named Defendants, this

6    Court finds Plaintiff fails to state a claim upon which relief can be granted. Despite Plaintiff's

7    assertions that Defendants' conduct was outrageous, the Court is not persuaded. Refusing or

8    failing to properly handle Plaintiff's mail and engaging in retaliatory behavior does not amount to

9    conduct so extreme is exceeds all bounds of decency to be "atrocious and utterly intolerable in a

10   civilized community." *See Gibson v. Dzurenda*, No. 3:18-cv-00190-MMD-WGC, 2020 WL

11   8611152, at *6 (D. Nev. Aug. 28, 2020) (permitting plaintiff to proceed on First Amendment

12   claim that correctional officer improperly opened his legal mail outside of his presence, which

13   resulted in a leak of Plaintiff's confidential PREA report and subjected Plaintiff to be a target for

14   retaliatory assault, but dismissing related IIED claim for lack of extreme and outrageous conduct),

15   *R&R adopted*, 2020 WL 8611118 (Oct. 20, 2020). Rather, the conduct is akin to insults,

16   indignities, annoyances or petty oppressions. *See Butler*, 2023 WL 1991591, at *6 (finding

17   plaintiff failed to sufficiently allege extreme or outrageous conduct by Defendants for transferring

18   inmates during COVID outbreaks and exposing plaintiff and inmates to the virus); *Hughes*, 46

19   Cal.4th at 1051 ("Liability for intentional infliction of emotional distress does not extend to mere

20   insults, indignities, threats, annoyances, petty oppressions, or other trivialities"); *cf. Morse v.*

21   *Cnty. of Merced*, No. 1:16-cv-00142-DAD-SKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13,

22   2016) (denying defendant's motion to dismiss and stating: "Here, the conduct alleged by plaintiff

23   in his complaint goes far beyond "mere insults" or indignities. Taking those allegations as true,

24   the individual defendants knowingly misrepresented information in order to arrest him and charge

25   him with murder, apparently in order to exact political retribution against plaintiff's father, a local

26   politician who had been critical of the Sherriff's Department. A jury could certainly find this

27   behavior was extreme and outrageous and beyond the bounds of decency").

28             In sum, the Court finds Plaintiff fails to state cognizable IIED claims against any named

1  Defendant. Further, because Plaintiff has been given two prior opportunities to amend his

2  complaint, granting him further leave to amend would be futile. *Hartman*, 707 F.3d at 1129-30.

3                                                    Claim 7

4       Plaintiff asserts state law negligence claims against all Defendants. (Doc. 45 at 17.)

5  Plaintiff alleges each Defendant owed a duty to Plaintiff imposed under 15 C.C.R. §§ 3130-3147

6  (addressed *supra*), breached that duty, and in doing so directly and proximately caused him

7  injury. (*Id.*) Plaintiff asserts "[s]upervisor level/capacity Defendants" are liable "through both

8  personal actions, as well as through the acquiescence to the ongoing violations of their

9  subordinates, negligently failed to curb" the violations, prolonging Plaintiff's injury. (*Id.*) Plaintiff

10 asserts Defendants' conduct was objectively unreasonable and "undertaken willfully, recklessly,

11 intentionally, with malice, and with deliberate indifference to the duty of care owed" to him. (*Id.*)

12 Lastly, Plaintiff contends it was reasonably foreseeable he would suffer injury. (*Id.*)

13                                       *Negligence: Legal Standards*

14      To state a negligence claim, "the plaintiff must show that (1) the defendant owed the

15 plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or

16 legally caused (4) the plaintiff's damages or injuries." *Thomas v. Stenberg*, 206 Cal.App.4th 654,

17 662 (2012).  Whether a defendant owes a duty of care in a particular case is a question of law

18 resolved by the court. *Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*, 1

19 Cal.5th 994, 1012 (2016); *see McCurry v. Singh*, 104 Cal.App.5th 1170, 1175 (2024) (duty to be

20 determined by court on "case-by-case basis").  "'Duty' is merely a conclusory expression used

21 when the sum total of policy considerations lead a court to say that the particular plaintiff is

22 entitled to protection." *Armato v. Baden*, 71 Cal.App.4th 885, 893 (1999).  In determining

23 whether a duty exists under California law, courts are to weigh, among other things, foreseeability

24 of the harm to the plaintiff, the nexus between a defendants conduct and plaintiff's injury, and

25 "the extent of the burden to the defendant and consequences to the community of imposing a duty

26 to exercise care with resulting liability for breach." *Id.* at 893-94 (quoting *White v. Southern Cal.*

27 *Edison Co.*, 25 Cal.App.4th 442, 447 (1994)).

28      In general, a party is under no duty to control the conduct of another. *Tarasoff v. Regents*

1   *of Univ. of Cal.*, 17 Cal.3d 425, 435 (1976).  An exception to this general rule may exist where

2   the defendant is in a "special relationship" with either the injured plaintiff or a third party whose

3   conduct created the harm that injured the plaintiff.  *Id.* at 436 (citing Rest. 2d Torts, sec. 315).

4   Relevant here, California recognizes that "jailers owe prisoners a duty of care to protect them

5   from foreseeable harm." *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal.App.4th 231, 252 (2008).

6   However, according to at least one court, the analysis in *Giraldo* "focuses on prison officers' duty

7   to protect prisoners from risks of 'physical harm,' risks to 'life and health,' 'risks of attack by

8   other prisoners,' and risks of rape. … Nothing in *Giraldo* imposes on prison officers a duty to

9   protect prisoners from disciplinary action when there is no allegation of physical harm." *Whithall*

10  *v. Gutierrez*, No. 20-cv-00910-CRB, 2024 WL 4505461, at *7 (N.D. Cal. Oct. 15, 2024).

*Negligence: Analysis*

11

12      As this Court previously determined (*see* Doc. 44 at 28-29), Plaintiff again states

13  cognizable claims against Defendants Anaya, Van Ingen, Doe #1 and Doe #2 for their purported

14  failure to follow "mail handling procedures" properly, resulting in injury to Plaintiff.

15      Additionally, the Court notes it previously determined that Plaintiff's assertions

16  concerning supervisory defendants were insufficient to state a claim because Plaintiff could not

17  "demonstrate that the acts and omissions of the supervisors were the proximate cause of his

18  injuries." (*Id.* at 29.) Based on Plaintiff's amended allegations in the third amended complaint, the

19  Court finds Plaintiff fails to sufficiently demonstrate these supervisory defendants owed the duty

20  of care Plaintiff alleges they breached.

21      First, although Plaintiff asserts these supervisory Defendants (who are not alleged to have

22  been directly involved in the mail-related violations described in the third amended complaint)

23  owed a duty to Plaintiff under 15 C.C.R. §§ 3130-3147, the Court has reviewed those mail

24  regulations and disagrees that they impose the duty Plaintiff alleges exists here (*e.g.*, to curb mail-

25  related violations, *see* Doc. 45 at ¶ 59-60).

26      Second, the general duties imposed by California courts upon jailers by virtue of a jailer's

27  special relationship *vis a vis* an inmate in general are limited to keeping inmates safe from

28  physical harm.  *See Whithall*, 2024 WL 4505461, at *7.  Those harms are distinct from the harms

1   asserted by Plaintiff here, particularly when applied to the supervisory defendants.

2        Accordingly, because Plaintiff has failed to cognizably allege that the supervisory

3   defendants owed Plaintiff the duty of care alleged, Plaintiff fails to state a negligence claim

4   against any other named Defendant and granting Plaintiff further leave to amend this claim would

5   be futile. *Hartman*, 707 F.3d at 1129-30.

6        **V.    CONCLUSION, ORDER, AND RECOMMENDATIONS**

7        As an initial matter, the Court notes the docket for this action still reflects Andreana

8   Winter as a plaintiff in this action.[4] Nevertheless, Plaintiff's third amended complaint makes clear

9   that Ms. Winter is not a named plaintiff. (*See* Doc. 45 at 1-2.) Moreover, "A. Shimmin, Associate

10  Warden at PVSP," "M. Padilla, Acting Warden at CCWF" and "Ollison, Correctional Counselor

11  II at CCWF" are not named in Plaintiff's third amended complaint. (*Id.*) Accordingly, this Court

12  **HEREBY ORDERS** the Clerk of the Court to terminate plaintiff "Andreana Winter" and

13  defendants "A. Shimmin," "M. Padilla" and "Ollison" from the docket for this action.

14       Further, for the reasons given above, the undersigned **HEREBY RECOMMENDS** as

15  follows:

16       1.   That this action **PROCEED** only on the following claims:

17            a.   First Amendment violations against Defendants Anaya, Frauenheim, Godwin,

18                 Van Ingen, Doe #1 and Doe #2 concerning Plaintiff's right to send and receive

19                 mail;

20            b.   First Amendment retaliation claims against Defendants Anaya, Van Ingen, and

21                 Does #1 and #2;

22            c.   First Amendment claims concerning mail policy against Defendants

23                 Macomber, Frauenheim, Godwin, and Lemon, in their official capacities;

---

[4] In the Court's First Screening Order issued August 6, 2021, it noted Plaintiff's claims and Ms. Winter's claims were "separate and distinct." (Doc. 11 at 9.) The order additionally discussed the Prison Litigation Reform Act and its filing fee provisions and case management issues involving multiple plaintiffs, before concluding that "Ms. Winter must be dropped as a plaintiff. She may proceed with her own action." (*Id.* at 9-10.) The order further stated: "With Ms. Winter dropped as a plaintiff, the defendants employed at the CCWF—M. Padilla, Ollison, J. Gaona, and any John/Jane Doe #3-12 … —must also be dropped as defendants, as they are not linked to [Plaintiff] Kohut's claims." (*Id.* at 10.) Subsequently, when Plaintiff filed his first amended complaint, Ms. Winter was not named as a plaintiff in this action. (*See* Doc. 22 at 1-2.) Nor was Ms. Winter named in Plaintiff's second amended complaint. (*See* Doc. 34 at 1.)

26

d.  A violation of Article I, Section 2, of the California Constitution against Defendant Macomber, in his official capacity;

e.  Fourteenth Amendment due process violations against Defendants Anaya, Van Ingen, and Doe #2;

f.  Bane Act claims against Defendants Anaya, Van Ingen, Doe #1 and Doe #2; and

g.  State law negligence claims against Defendants Anaya, Van Ingen, Doe #1 and Doe #2;

2.  That any remaining claims asserted against any other named Defendant be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  __**May 9, 2025**__                    _____

UNITED STATES MAGISTRATE JUDGE